### Dr. Forest Manice *v.* George Duncan, f. m. c.

*Non constat* that the endorser of a promissory note against whom a solidary judgment has been attained with the maker, was a mere surety for the latter.

Suffering a sale to be postponed, after a seizure under execution, is not *per se* a prolongation of the term of payment to the judgment debtor, when the sale takes place sooner than it could have been forced in the usual course of legal proceedings. Nor will a mere waiver of forms and delays in the sale under execution discharge the co-debtor, where no resulting injury is shown. Where an execution has been returned, it will be presumed, in the absence of proof to the contrary, that it was ordered to be returned for sufficient reasons. A mere failure to execute the judgment will no more release the co-debtor than a forbearance to sue would have discharged the endorser.

APPEAL from the District Court of Natchitoches, *Ogden,* J.
  *A. H. Pierson,* for plaintiff and appellant.  *Hamilton, Chaplin* and *Morse,* fnr appellee.

Spofford, J. This is an hypothecary action, having for its object to subject a town lot and house in Natchitoches, and a slave named *Harriet,* to the payment of a certain judgment obtained in 1839, by the plaintiff, against *William Long,* the former owner of the property, and duly inscribed and re-inscribed in the mortgage office of the Parish of Natchitoches.

There is no dispute as to the former existence of the judicial mortgage; but it is contended on behalf of the third possessor, *Mary Ellen Long,* and the judgment debtor, *William Long,* (who intervenes to defend the title of the the former,) that the judgment as to him is extinguished, and that the judicial mortgage has therefore ceased to affect the property. There was a verdict and judgment below sustaining this defence, and the plaintiff has appealed.

The original judgment referred to, was rendered in favor of this plaintiff, against *David O'Neill, Lewis G. De Russy, William Long* and *John Tucker, in solido.* But the petition of *Manice,* alleged that the claim was based upon a promissory note made by *David O'Neill,* and endorsed by the the other defendant.

The defence now interposed by *Long,* as a party to the hypothecary action, is that he was a mere surety in the judgment for *O'Neill,* the principal debtor, and that all liability on his part, under the judgment rendered against himself and *O'Neill, in solido,* has been extinguished by the indulgence of the plaintiff, the judgment creditor, towards *O'Neill,* by prolongation of the time of payment, by the release of a seizure by amicable arrangement, and by *laches* generally, whereby a subrogation in his own favor to the rights of the plaintiff against *O'Neill,* has been rendered impossible.

Upon this issue, the intervenor, *Long,* assumed the burden of proof; and it was incumbent upon him to make out a clear case of release.

In the first place, he should have shown that he occupied and still occupies the position of a surety, in order to invoke the rules of the Civil Code under that title. He has not done so. It is not alleged or proved that he was originally an accommodation endorser of *O'Neill.* For aught that appears, he might have been as much interested in contracting the debt toward *Manice,* as *O'Neill* himself. The judgment is a solidary one, and if it did not change his

attitude relatively to *O'Neill*, it fixed his liability as an absolute debtor to *Manice* jointly and severally with *O'Neill*. The utmost that can be said is, that prior to the judgment he appeared as an endorser of a note of which *Manice* was the maker. *Non constat*, that he was a mere surety. See *Dubuch* v. *Godchaux*, 6 Ann. 780.

Again, if it be conceded that his position as endorser towards the holder was unaffected by the solidary judgment rendered against himself and the maker, and that he can exact the same diligence from the judgment creditor in the pursuit of the maker after as before the judgment, still the burden is upon him to show, by satisfactory evidence, the giving of time, for a consideration, to his co-debtor, *O'Neill*, or other acts of the creditor, whereby his own condition was rendered more onerous. *Woodbury* v. *Friend*, 19 L. R. 496. This he has not done. The evidence is obscure and quite too indefinite to fix upon the plaintiff the commission of acts which would discharge the intervenor, considering him still as an intervenor. It is not made reasonably certain that the horses alluded to in argument were seized under an execution against *O'Neill* in favor of *Manice*, or released by the latter's orders. It is not clear that *Manice* or his attorney, ever took the *Luckett* claim under an agreement to credit its proceeds on the judgment and then gave it up, or lost it by neglect. It is not shown that any injury was done, or any loss sustained by the consent of *O'Neill* to the sale of the *Luckett* claim seized under execution against him before the legal time for the advertisements would have expired, or by the subsequent postponement of the sale, by consent of parties, for five days longer than the term first agreed upon, the new term being still within the delay which the law would have required. Suffering a sale to be postponed after a seizure under an execution, is not *per se* a prolongation of the term of payment to the judgment debtor, when the sale takes place sooner than it could have been forced in the usual course of legal proceedings. And it is inadmissible to say that a mere waiver of forms and delays in the sale under execution when no resulting injury is shown, will discharge the co-debtor. The same thing may be said of the return of an execution issued upon a twelve months' bond given by *O'Neill;* in the absence of proof to the contrary, we must believe that it was ordered to be returned for sufficient reasons.

And a mere failure to execute the judgment, cannot of itself, absolve the co-debtor, any more than a forbearance to sue before judgment would have discharged the endorser.

The return of the Sheriff that a writ of *fieri facias* was satisfied *pro tanto* by the taking of a twelve months' bond, cannot override the law, which declares that a twelve-months' bond does not operate a novation or extinguishment of the judgment under which the execution issued.

It was the business of the intervenor, under his allegations, to show an agreement on the part of plaintiff to give time to *O'Neill* for a consideration, or some act which operated to his injury by impairing rights to which he should have been subrogated. He has failed to show either. If he was the surety of *O'Neill*, as his argument assumes, he could, so far as the record informs us, by paying the judgment which he was legally bound to pay, have been subrogated to all the rights of the judgment creditor, unimpaired by any act of the latter.

There was no transaction or compromise between the plaintiff and his judgment debtor, *O'Neill*.

It is proper to remark, without expressing our concurrence or dissent, since

<div style="float:right">

</div>

the views we have already presented make it unnecessary for us to decide upon that point, that the latest adjudged case to which we have been referred in our State reports, affirm the doctrine of Judge Story, in contradiction to one or two previous decisions : "Even a valid agreement to give time to the maker, or to a prior endorser, will not discharge a subsequent endorser, or affect the rights of the holder, when the indulgence is granted, or agreed to be granted, after such subsequent endorser has been fixed with a final judgment against him at the suit of the holder." Story's Prom. Notes, §417, cited in the *Louisiana State Bank* v. *Haralson*, 2 Ann. 457. Contra *Gustine* v. *Union Bank*, 10 Rob. 412.

Prescription cannot avail the third possessor in this case. *Bibb* v. *Union Bank*, 3 Ann. 334. Moreover, *Mrs. Long* acquired her title to the town property within ten years previous to this action. The judgment was not prescribed.

It is idle for her to complain that one of plaintiff's counsel released the judicial mortgage so far as it bore upon one portion of *Long's* property, before she acquired the property now attached and which she bought under mortgage certificates which notified her of the present incumbrance.

It is, therefore, ordered and decreed, that the judgment appealed from be reversed; and it is further adjudged and decreed, that the plaintiff's judicial mortgage be recognised as affecting the town lot and improvements and the slave *Harriet* described in his petition, and that the said property be seized and sold to satisfy the judgment in favor of *Dr. Forest Manice* against *William Long*, for the sum of five hundred dollars with five per cent interest thereon form the 23d August, 1838, until paid, and four dollars and fifty cents costs of protest and costs of suit, unless within ten days after notice of this judgment the defendant herein shall pay and satisfy said judgment; and it is further ordered and decreed, that the defendant pay costs in both courts.